## STATE OF CONNECTICUT *v.* VICTOR C.*
## (AC 34055)

Robinson, Alvord and Keller, Js.

---

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued April 11—officially released August 20, 2013

*Michael Zariphes*, assigned counsel, for the appellant (defendant).

*Adam E. Mattei*, deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Cornelius P. Kelly*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Victor C., appeals from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of General Statutes

§ 53-21 (a) (2).[1] On appeal, the defendant claims that the trial court improperly (1) denied his postverdict motions for a judgment of acquittal and a new trial on the basis of insufficient evidence; (2) permitted the state, just prior to presenting its case-in-chief, to file a substitute information extending the time period during which the alleged crimes were committed, and denied his request for a continuance in order to formulate a defense for the extended time period; and (3) admitted the hearsay statements of the minor victim contained within the testimony of a nurse practitioner. We affirm the judgment of conviction.

The jury reasonably could have found the following facts in support of its verdict. In 2009, the victim was thirteen years old. Between March and September of that year, her mother was staying at a drug rehabilitation center, and the victim was living in a house in Bridgeport with her grandmother, grandfather, uncle, one or two younger siblings, and her stepfather, the defendant. One night, the defendant entered the victim's bedroom and, after removing her clothes, rubbed his erect penis on her breasts and vagina (incident). The victim did not attempt to stop the incident from occurring because she was scared.

The victim told her mother about the incident while her mother was residing at the drug rehabilitation center. Her mother previously had been investigated by the Department of Children and Families (department), and she did not inform anyone of what had happened to her daughter. The victim then told her uncle's girlfriend

---

[1] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

about the incident, and through a series of conversations, several members of the victim's family became aware of the incident. At about the same time, the victim's special education teacher, who is a mandated reporter; see General Statutes § 17a-101 (b); noticed that the victim was unfocused and apathetic in the classroom. She confronted the victim about her change in attitude, and the victim told her about the incident. The special education teacher brought the victim to the school's social worker, and the department was contacted. The victim was interviewed by a department investigator and later by a forensic examiner. Approximately fifteen days after disclosing the incident to her special education teacher, the victim was examined by Janet Murphy, a nurse practitioner at the child sexual abuse clinic (clinic) at Yale-New Haven Hospital. Murphy's examination consisted of an interview of the victim as well as a physical examination.

The record reveals the following procedural history. The defendant was charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), risk of injury to a child in violation of § 53-21 (a) (2) and threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). On December 30, 2010, the state filed a substitute part A information alleging that he violated those statutes on "an undetermined date in November or December of 2009 . . . ." On August 2, 2011, the state filed an amended substitute information, which differed from the original information only in that it removed the charge of threatening in the second degree. On September 12, 2011, the state filed a substitute information, which alleged that the defendant committed the three remaining crimes "on an undetermined date between March and December of 2009 . . . ."

The state proffered the September 12, 2011 substitute information outside the presence of the empaneled jury just prior to commencing its case-in-chief against the defendant. The defendant objected to the substitute information on the ground that expanding the time period when the incident occurred from November or December, 2009, to sometime between March and December, 2009, was a violation of his due process and confrontation clause rights. During his argument in support of his objection, he requested a continuance to further investigate and formulate a defense for the expanded time period. After argument, the court determined that the time period was not an essential element of the alleged crimes and overruled the defendant's objection to the substitute information.

Following the presentation of the state's case-in-chief, the court granted the defendant's oral motion for a judgment of acquittal as to sexual assault in the first degree, and the state filed an amended substitute information to reflect that judgment. The jury subsequently returned a guilty verdict on the charge of risk of injury to a child in violation of § 53-21 (a) (2), and was unable to reach a unanimous verdict on the charge of sexual assault in the second degree. The defendant then filed a motion for a judgment of acquittal and a motion for a new trial. The court denied both motions. Thereafter, the court rendered judgment of conviction on the charge of risk of injury to a child in violation of § 53-21 (a) (2) and sentenced the defendant to incarceration for twenty years, suspended after fifteen years, and ten years of probation. This appeal followed.

I

The defendant first claims that the court improperly denied his postverdict motions for a judgment of acquittal and a new trial on the basis of insufficient evidence. He argues that the inconsistency and impeachment of

the victim's testimony cast significant doubt on its veracity, and that the victim's testimony about the incident, absent any physical evidence, was insufficient to support the jury's guilty verdict. We do not agree that the evidence was insufficient to sustain the conviction.

The record reveals that the defense strategy was to undermine the credibility of the victim and that the victim's testimony was inconsistent and contradicted by other testimony. For example, the victim initially testified that she could not remember where within the home or what time of day the incident occurred, but subsequently testified that the incident happened in her bedroom at night. Throughout her testimony, when she was posed questions pertaining to the incident, the victim testified that she could not remember. Oftentimes, however, she would follow up those answers by stating, "I don't want to remember," and then providing an answer to the question. On cross-examination, after answering a series of questions about the discrepancy between her answers of, "I don't remember," and, "I don't want to remember," the victim answered yes to a leading question about whether she had fabricated the entire story about the incident. Her answer to the next question, however, denied that she had fabricated the story, and defense counsel did no further questioning on that topic. After the victim testified, the jury heard testimony from the victim's special education teacher that the victim had difficulty expressing herself, receiving information, maintaining concentration and disclosing personal information. The jury also heard testimony from the forensic interviewer, who testified that when he interviewed the victim, she was anxious, nervous and uncomfortable during the interview, and that she responded, "I don't remember," multiple times to his questions. He further testified that when he asked the victim about such responses, the victim stated that

she responded in that manner because it was hard to talk about the incident.

The victim testified that the incident occurred in November or December, 2009, while her mother was staying at the drug rehabilitation center. This testimony was contradicted by the testimony of one of her uncles that the victim's mother had left the drug rehabilitation center and returned home in September, 2009. In the defendant's case-in-chief, he offered the impeachment testimony of another one of the victim's uncles. That uncle's testimony, that the victim's one year old brother could not have been staying at the house with the victim at the time of the incident, contradicted the victim's testimony that her brother was present when the incident occurred.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [A reviewing court] cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Moore*, 141 Conn. App. 814,

818, 64 A.3d 787, cert. denied, 309 Conn. 908, 68 A.3d 663 (2013).

"Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *John O.*, 137 Conn. App. 152, 160, 47 A.3d 905, cert. denied, 307 Conn. 913, 53 A.3d 997 (2012). "When conflicting testimony is presented, the jury may credit the testimony it finds believable. . . . Therefore, [t]he [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Madore*, 96 Conn. App. 271, 283, 900 A.2d 64, cert. denied, 280 Conn. 907, 907 A.2d 93 (2006). Moreover, the state need not present physical evidence in order to secure a conviction; see *State* v. *Pedro S.*, 87 Conn. App. 183, 201, 865 A.2d 1177, cert. denied, 273 Conn. 924, 871 A.2d 1033 (2005); the jury may find a defendant guilty based solely on the testimony of one witness. See, e.g., *State* v. *Madore*, supra, 283 n.12. The dispositive question in this case, therefore, is whether the victim's testimony provided the jury with a reasonable basis on which it could conclude that the state proved beyond a reasonable doubt each of the elements of § 53-21 (a) and, thus, provided the jury with a sufficient basis on which it could find the defendant guilty of that charge.

To convict the defendant of risk of injury to a child pursuant to § 53-21 (a) (2), the state was required to prove beyond a reasonable doubt that he "ha[d] contact with the intimate parts, as defined in section 53a-65,[2]

---

[2] " 'Intimate parts' means the genital area or any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or breasts." General Statutes § 53a-65 (8).

of a child under the age of sixteen years *or* subject[ed] a child under sixteen years of age to contact with the intimate parts of [the defendant] in a sexual and indecent manner likely to impair the health or morals of such child . . . ." (Emphasis added.) The state elicited the testimony of the victim, who testified that when she was thirteen years old the defendant entered her bedroom one night, removed her clothing and rubbed his erect penis on her breasts and vagina. The victim's testimony, therefore, provided evidence that the defendant's conduct met the elements of § 53-21 (a) (2) on the basis of either contact with the victim's intimate parts or the subjection of the victim to contact with the intimate parts of the defendant such that the manner of contact was likely to impair the victim's health or morals. The jury was entitled to credit any portion of the victim's testimony and properly could find the defendant guilty based solely on her testimony about his conduct. Accordingly, there was sufficient evidence to convict the defendant of risk of injury to a child. The court properly denied the defendant's postverdict motions for a judgment of acquittal and a new trial.

## II

The defendant next claims that the court abused its discretion when (1) it allowed the state, just prior to presenting its case-in-chief, to submit a substitute information that expanded the time period during which the alleged crimes occurred, and (2) it denied the defendant's request for a continuance to investigate and prepare a defense for the expanded time period in the substitute information. We do not agree that the court abused its discretion.

The record reveals that on the morning of September 12, 2011, the court, *Thim, J.*, opened court by noting that the state had filed a substitute information. The prosecutor explained that the substitute information

contained two changes. First, it changed the time frame during which the alleged crimes occurred from "an undetermined date in November or December of 2009" to "an undetermined date between March and December of 2009 . . . ." Second, it changed the number of the street address of the house where the alleged crimes occurred. The defense attorney objected, stating: "Your Honor . . . I object to the amending of the information. Not the address, but the expansion of the time period. We've never dealt with a time period other than November [and] December, 2009. Our whole—everything we've ever been given is that time. To expand it at this time, I would ask for a delay so we can further our investigation. Our investigation focused on the original time span. I think it's—at the time of trial to expand it by eight months in a case like this would be inappropriate and would deny my client due process and a right to confront witnesses and a fair trial."

The prosecutor argued that the state should be permitted to submit a substitute information because time was not an essential element of the crimes. The prosecutor explained that the original information reflected the original time estimate provided by the victim, but that subsequently the victim had said with certainty that the incident occurred while her mother was staying at the drug rehabilitation center, and the prosecutor anticipated that a witness for the defense would testify that the victim's mother was staying at the drug rehabilitation program from March, 2009, until September, 2009. Finally, the prosecutor noted that the defendant was not prejudiced because the defendant could cross-examine the victim as to the discrepancy in her statements, and the victim's mother was available to testify. Defense counsel rebutted the prosecutor's explanation by echoing his objection that the time period was essential in this case and that to expand it by eight months would be prejudicial. The court disagreed and explained its

ruling to defense counsel: "The time period is not an essential element of the crime. You said that it might—that somehow this affects the investigation you've done. I just don't see that here. You do not have an alibi defense that has been filed. I just don't see a demonstration of prejudice." Defense counsel countered that he did not know whether he had an alibi defense for the time period between March and October, 2009, because he had not had the need to investigate those months. The court overruled the objection.

## A

We first review whether the court abused its discretion by allowing the state, just prior to presenting its case-in-chief, to submit a substitute information that expanded the time period during which the alleged crimes occurred. "Before a trial begins, the state has broad authority to amend an information pursuant to Practice Book § 36-17. Once the trial has started, however, the prosecutor is constrained by the provisions of Practice Book § 36-18. This court has held that for purposes of Practice Book §§ 36-17 and 36-18, a criminal trial begins with the voir dire of the prospective jurors. . . .

"Under Practice Book § 36-18, if good cause is shown, the court may permit the state to amend the information at any time before a verdict is returned. The sole limiting requirement under Practice Book § 36-18 is that no additional or different offense may be charged in an amendment, and no substantive rights of the defendant may be prejudiced by an amendment. . . .

"The trial court may permit the state, after the start of the trial, to file an amended information to conform to the evidence. . . . The order of the trial court allowing the filing of such an amendment to conform to the evidence is generally within its sound discretion

. . . and thus subject to review only upon circumstances indicating an abuse of that discretion. . . .

"If the state seeks to amend charges after the commencement of trial, it shoulders the burden of establishing that no substantive rights of the defendant would be prejudiced. . . . Like any other party petitioning the court, the state must demonstrate the basis for its request. Under [Practice Book] § 624 [now § 36-18], the state must show: (1) good cause for the amendment; (2) that no additional or different offense is charged; and (3) that no substantive right of the defendant will be prejudiced. This allocation of burden encourages the state to prepare its case carefully because it bears the burden of justifying subsequent adjustments." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Wilson F.*, 77 Conn. App. 405, 411–13, 823 A.2d 406, cert. denied, 265 Conn. 905, 831 A.2d 254 (2003). The defendant concedes that the state met the second prong of the test—no additional offense was charged—but he argues that the state failed to meet the first and third prongs of the test.

To comply with the first prong of the test and "meet its burden of showing good cause to amend an information pursuant to the rules of practice, the state must provide more than a bare assertion that it is merely conforming the charge to the evidence." *State* v. *Jordan*, 132 Conn. App. 817, 825, 33 A.3d 307, cert. denied, 304 Conn. 909, 39 A.3d 1119 (2012). The state must demonstrate *why* the information necessitated substitution. Id.; see also *State* v. *Grant*, 83 Conn. App. 90, 93–95, 98, 848 A.2d 549 (good cause shown when information amended to expand time frame to conform to victim's testimony that changed from identifying specific date to providing date range when incidents occurred), cert. denied, 270 Conn. 913, 853 A.2d 529 (2004); *State* v. *Wilson F.*, supra, 77 Conn. App. 413 (good cause shown when amended date in information would more closely

conform to anticipated testimony, testifying victim was young when incident occurred and incident occurred years prior). Here, the prosecutor provided a lengthy explanation to the court of his rationale for proffering the substituted information. The prosecutor explained that the victim originally had stated that the incident occurred in November or December, 2009, but subsequently had stated with certainty that the incident had occurred while her mother was staying at the drug rehabilitation center. The state learned that the victim's uncle would be testifying that the victim's mother attended the drug rehabilitation center from March, 2009, until September, 2009. The state also was aware that the victim had difficulty remembering the details of the incident because, as she repeatedly stated in interviews prior to trial and subsequently reiterated during her testimony at trial, she did not want to remember the incident. It was reasonable for the court to determine that the state showed good cause for amending the information to conform to the anticipated testimony that would be presented by a child victim who was unsure of the date when the incident occurred and the victim's uncle who would testify that the victim's mother was not staying at the drug rehabilitation center in November and December, 2009.

With regard to the third prong of the test, "the decisive question is whether the defendant was informed of the charges with sufficient precision to be able to prepare an adequate defense." *State* v. *Tanzella*, 226 Conn. 601, 608, 628 A.2d 973 (1993). "[T]he constitutional right to be informed of the nature and cause of the accusation entitles the defendant to insist the indictment apprise him of the crime charged with such reasonable certainty that he can make his defense and protect himself after judgment against prosecution on the same charge." (Internal quotation marks omitted.) *State* v. *Grant*, supra, 83 Conn. App. 98–99. "[I]t is not essential in a

criminal prosecution that the crime be proved to have been committed on the precise date alleged, it being competent ordinarily for the prosecution to prove the commission of the crime charged at any time prior to the date of the complaint and within the period fixed by the Statute of Limitations. . . . Thus, it is entirely proper for a court to permit an amendment or a substitute information merely to amplify or to correct the time of the commission of the offense when time is not a material ingredient of the crime charged." (Citations omitted; internal quotation marks omitted.) *State* v. *Ramos*, 176 Conn. 275, 276–77, 407 A.2d 952 (1978).

"Time is not usually an essential element of an offense"; *State* v. *Orsini*, 187 Conn. 264, 274, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982); and this case in which the defendant did not file an alibi defense does not present an abnormality. See *State* v. *Horton*, 132 Conn. 276, 277, 43 A.2d 744 (1945); *State* v. *Ferris*, 81 Conn. 97, 99, 70 A. 587 (1908). The defendant was aware that he was on trial for charges stemming from a single incident involving alleged sexual abuse of his stepdaughter. Whether the incident occurred in March, 2009, December, 2009, or sometime in between is not essential to being apprised of the crime charged with such reasonable certainty that he could formulate a defense. The defendant did not present an alibi defense; rather, the theory of his defense was that the victim had fabricated the story because she did not like him. The expanded time frame of the substitute information did not impair his ability to make that argument, as he still was able to elicit testimony that exposed inconsistencies in the victim's testimony. Further, prior to trial, the defendant was aware that the forensic interviewer's report provided that the incident occurred while the victim's mother was at the drug rehabilitation center, and the first substitute information provided that the incident occurred on "an

undetermined date . . . ." Accordingly, we conclude
that the court did not abuse its discretion in permitting
the state to file a substitute information because the
defendant was not deprived of his "constitutional right
to be informed of the nature and cause of the accusa-
tion" against him. (Internal quotation marks omitted.)
*State* v. *Grant*, supra, 83 Conn. App. 98.

B

We next review whether the trial court abused its
discretion by denying the defendant's request for a con-
tinuance to investigate and prepare a defense for the
expanded time frame included in the substitute informa-
tion. "The determination of whether to grant a request
for a continuance is within the discretion of the trial
court, and will not be disturbed on appeal absent an
abuse of discretion. . . .

"A reviewing court is bound by the principle that
[e]very reasonable presumption in favor of the proper
exercise of the trial court's discretion will be made.
. . . To prove an abuse of discretion, an appellant must
show that the trial court's denial of a request for a
continuance was arbitrary. . . . There are no mechani-
cal tests for deciding when a denial of a continuance
is so arbitrary as to violate due process. The answer
must be found in the circumstances present in every
case, *particularly in the reasons presented to the trial
judge at the time the request is denied.* . . . In the
event that the trial court acted unreasonably in denying
a continuance, the reviewing court must also engage
in harmless error analysis. . . .

"Among the factors that may enter into the court's
exercise of discretion in considering a request for a
continuance are the timeliness of the request for contin-
uance; the likely length of the delay; the age and com-
plexity of the case; the granting of other continuances in
the past; the impact of delay on the litigants, witnesses,

opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; the defendant's personal responsibility for the timing of the request; [and] the likelihood that the denial would substantially impair the defendant's ability to defend himself . . . . We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Davis*, 135 Conn. App. 385, 393–94, 42 A.3d 446, cert. denied, 305 Conn. 916, 46 A.3d 171 (2012).

In this case, defense counsel, in the midst of his argument in support of the defendant's objection to the filing of the substitute information, timely requested a continuance by simply stating: "To expand [the time period] at this time, I would ask for a delay so we can further our investigation." Defense counsel advanced no separate argument in favor of a continuance, but rather conflated that initial request with his argument in support of his objection to the proffered substitute information. Defense counsel argued that he did not have reason to investigate March through October, 2009, previously, but he did not specify what he wanted to investigate during this time period. Rather, he hypothesized that a potential alibi defense for the time period of March through October, 2009, could be discovered. Further, defense counsel did not specify for how long he was requesting a continuance, and the court was aware that the state's principal witness had travelled from out of state to testify on the morning when the defendant made his request.

It is unlikely that the court's denial of the defendant's request substantially impaired the defendant's ability to defend himself because the theory of defense related primarily to discrediting the victim's testimony, and the defendant has not presented any rationale as to how further investigation could have increased the success

of that strategy. Even if we assume arguendo that the one sentence in which defense counsel requested a "delay" constituted a sufficient request for a continuance and, further, that the court's denial of the defendant's objection to the filing of a substitute information was also a denial of a continuance,[3] the record reflects that the reasons that were presented to the court as support for the continuance do not constitute a sufficient basis on which we can conclude that the denial of a continuance was an abuse of discretion.

## III

The defendant next claims that the court improperly admitted the victim's hearsay statements contained within the testimony of a nurse practitioner. He argues that the statements that the victim made to Murphy during her examination were inadmissible under the medical exception to the hearsay rule because her statements "were motivated by a desire to further an investigation and aid in the prosecution of the defendant with respect to her false/fabricated allegation of sexual abuse."[4] We are not persuaded.

The record reveals that the state called Murphy, who testified as to the following on September 13, 2011. Murphy works as a pediatric nurse practitioner and an associate medical director at the clinic. The clinic provides a variety of services to children in various

---

[3] The state does not contend that the defendant's request was not properly preserved at trial. The record reveals that the thrust of the argument in which the request appears concerned the objection to the filing of the substitute information, and both defense counsel and the prosecutor mentioned the possibility of a continuance only in passing. At the conclusion of argument, the court denied defense counsel's objection to the filing of the substitute information, did not mention a continuance, and asked defense counsel if he was ready to proceed before the jury. Defense counsel answered in the affirmative.

[4] The defendant does not object to the admission of any statements in particular, but rather to any hearsay statement made within this portion of Murphy's testimony.

towns and cities, but Murphy's work with children from Bridgeport consists of conducting medical evaluations. It was in this capacity that she saw the victim on March 30, 2010.

Prior to conducting a physical examination of the victim, Murphy obtained a "history," which she defined as information collected about the reason a physician is seeing a patient. She had some information about why the victim had come to see her, but Murphy testified that she "had a few more medical questions around what happened, making sure [she] knew what [she] needed to check. And it's not just the physical well-being of [the victim], but some of it is the emotional well-being, checking in to see how she is doing, is she feeling safe. And [the clinic's] intent is to also get these kids into therapy and kind of making sure that [the victim is] doing okay to determine how urgent do we need to get [the victim] into therapy . . . ." After Murphy provided this explanation of the type of information the victim revealed in her history, the prosecutor asked Murphy whether obtaining the history was critical to her diagnosis and treatment of the victim. Murphy answered in the affirmative. The prosecutor then tried to ask about what the victim had said when Murphy obtained her history, but defense counsel objected on the ground that Murphy's testimony about what the victim said was hearsay. The state claimed the question and advocated that the alleged hearsay contained in Murphy's response would be admissible pursuant to § 8-3 (5) of the Connecticut Code of Evidence. The court overruled the objection on the basis of § 8-3 (5) and *State* v. *Arroyo*, 284 Conn. 597, 935 A.2d 975 (2007). Murphy then testified about what the victim said when Murphy obtained her history, including that she was worried about the adequacy of the medical care that she had sought at her school and that she wanted Murphy to

conduct a pregnancy test on her and explain to her the result.

"In *State* v. *Saucier*, 283 Conn. 207, 926 A.2d 633 (2007) (en banc), [our Supreme Court] stated: To the extent a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. They require determinations about which reasonable minds may not differ; there is no judgment call by the trial court . . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Miller*, 121 Conn. App. 775, 780, 998 A.2d 170, cert. denied, 298 Conn. 902, 3 A.3d 72 (2010).[5] In this case, the court identified the section of the Connecticut Code of Evidence that provides the medical exception to the hearsay rule and admitted the hearsay statements of the victim through the testimony of Murphy pursuant to it. The defendant does not claim that the court made an erroneous interpretation of the law, and we therefore review the court's determination under the abuse of discretion standard.

"Section 8-3 (5) of the Connecticut Code of Evidence provides an exception to the hearsay rule for [a] statement made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical

---

[5] We note that "[i]n order to establish reversible error on evidentiary impropriety . . . the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Internal quotation marks omitted.) *State* v. *Cecil J.*, 291 Conn. 813, 819, 970 A.2d 710 (2009).

diagnosis or treatment." (Internal quotation marks omitted.) *State* v. *Serrano*, 123 Conn. App. 530, 540, 1 A.3d 1277 (2010), cert. denied, 300 Conn. 909, 12 A.3d 1005 (2011). "Admissibility of out-of-court statements made by a patient to a medical care provider depends on whether the statements were made for the purposes of obtaining medical diagnosis or treatment . . . and on whether the declarant's statements reasonably were related to achieving those ends. . . . The term medical encompasses psychological as well as somatic illnesses and conditions." (Citations omitted; internal quotation marks omitted.) *State* v. *Telford*, 108 Conn. App. 435, 440, 948 A.2d 350, cert. denied, 289 Conn. 905, 957 A.2d 875 (2008). "Although [t]he medical treatment exception to the hearsay rule requires that the statements be both pertinent to treatment and motivated by a desire for treatment . . . in cases involving juveniles, our cases have permitted this requirement to be satisfied inferentially." (Internal quotation marks omitted.) *State* v. *Juan V.*, 109 Conn. App. 431, 446–47, 951 A.2d 651, cert. denied, 289 Conn. 931, 958 A.2d 161 (2008).

In this case, the court admitted the testimony of Murphy pursuant to § 8-3 (5) of the Connecticut Code of Evidence and *State* v. *Arroyo*, supra, 284 Conn. 597. In *Arroyo*, our Supreme Court affirmed the admission of a child victim's hearsay statements through a witness' testimony, which recounted statements that the victim had made during forensic interviews she conducted with the victim. The defendant in *Arroyo*, however, was not claiming that the court improperly admitted the testimony of the forensic interviewer because it was inadmissible hearsay, but rather that it was a violation of the defendant's rights under the confrontation clause. Id., 625–35. While the admission of a hearsay statement is limited by the parameters of the confrontation clause; see *State* v. *Cameron M.*, 307 Conn. 504, 515, 55 A.3d 272 (2012), cert. denied,     U.S.    , 133 S. Ct. 2744,

186 L. Ed. 2d 194 (2013); the defendant in this case did not make a confrontation clause objection at trial, nor would one have been applicable because the victim was available to testify.

The defendant argues that the victim's statements were not made to Murphy for purposes of obtaining a medical diagnosis or treatment or describing her medical history, but rather "it was to further her untruthful, unfounded and wrongful attempt to better her life, attitude, depression, anger and living arrangements by providing false and fabricated allegations, information, evidence and statements to other persons in positions of authority who could and would have the ability to help prosecute the defendant because she was depressed and angry about the loss of three family members in the last year, her mother was away due to drug issues and the defendant had disciplined her for talking to older men on her computer." The record, however, supports a conclusion that the victim's statements were made for medical purposes.

According to Murphy, she believed that the victim "was just really trying to answer [her] questions and really get good medical care." This is exemplified by the anecdote Murphy recounted wherein the victim asked for a pregnancy test because she had missed several menstrual periods, requested that Murphy actually show her the result of the test because her school nurse had not done so, and then asked Murphy to repeat the test to ensure that she was not pregnant. As for Murphy's purpose in interviewing the victim in order to learn her history, she testified that an interview to obtain a patient's history was common practice and critical to the proper diagnosis and administration of the best physical and psychological care. The court, therefore, did not abuse its discretion in admitting the hearsay statements made by the victim pursuant to § 8-3 (5) of the Connecticut Code of Evidence because the

statements were made for the purposes of obtaining a medical diagnosis and describing her history to Murphy.

The judgment is affirmed.

In this opinion the other judges concurred.