******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

VICTOR C.* *v.* COMMISSIONER
OF CORRECTION
(AC 39582)

Lavine, Prescott and Bear, Js.

*Syllabus*

The petitioner, who had been convicted of the crime of risk of injury to a
child in connection with his alleged sexual abuse of his minor stepdaugh-
ter, sought a writ of habeas corpus, claiming that he had received ineffec-
tive assistance from his trial counsel. Specifically, he claimed that his
trial counsel improperly failed to present testimony from certain wit-
nesses, to advise him properly as to his right to testify and to present
testimony from an expert on child sexual abuse. The habeas court
rendered judgment denying the petition for a writ of habeas corpus,
from which the petitioner, on the granting of certification, appealed to
this court. *Held*:

1. The habeas court properly determined that trial counsel's decision not
to present testimony from the petitioner's sister and former wife did
not constitute deficient performance, counsel's decision having been
strategic in nature; that court credited counsel's testimony that he did
not have the former wife testify due to her serious battle with drug
addiction and because she would not have been a reliable witness, it
concluded that testimony from the petitioner's sister would have been
cumulative of that of another witness, who testified in the criminal trial
instead of the petitioner's sister, and the petitioner failed to present any
evidence that testimony from his former wife and sister would have
benefited his defense.

2. The petitioner could not prevail on his claim that the habeas court improp-
erly found that he was not prejudiced by his trial counsel's failure to
advise him fully of his right to testify at trial and by counsel's having
dissuaded him from testifying; that court found that trial counsel had
provided the petitioner with strategic and considered legal advice not
to testify on the basis of counsel's prior criminal trial experience, and
his assessment of the strength of the state's case and of the petitioner's
status as a sentenced prisoner and ability to testify on cross-examination
without damaging the defense, and counsel's advice did not constitute
deficient performance, or prejudice the petitioner, as the court found
that the petitioner did not insist on testifying, it credited counsel's
testimony that he made the petitioner aware that the ultimate decision
to testify belonged to the petitioner, and it found that the petitioner's
testimony that trial counsel had met with him only once was thoroughly
unconvincing and that it was not reasonably probable that the petitioner
would have received a more favorable verdict, given his unconvincing
explanation for the victim's allegations against him, combined with the
likelihood that cross-examination would have exposed him as a drug
abusing felon with no current, positive relationship with his children.

3. The petitioner could not prevail on his claim that the habeas court improp-
erly determined that his trial counsel did not render ineffective assis-
tance by failing to consult an expert on child sexual abuse or to present
expert testimony in that regard; the habeas court credited counsel's
testimony regarding his knowledge of how to try a sexual assault case,
found that impeachment evidence at the criminal trial supported the
petitioner's defense that the victim had fabricated her allegations against
him, and found that counsel had conducted an extensive cross-examina-
tion of the victim by pointing out inconsistencies between the medical
and investigation records, and the victim's testimony and that of other
witnesses, and the petitioner failed to provide evidence that the outcome
of the criminal trial would have been different had his counsel consulted
with an expert on child sexual abuse.

Argued October 10, 2017—officially released February 13, 2018

*Procedural History*

Amended petition for a writ of habeas corpus,

brought to the Superior Court in the judicial district of Tolland and tried to the court, *Oliver, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Isaias Luis Pedraza*, assigned counsel, for the appellant (petitioner).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Emily D. Trudeau*, assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Victor C., appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly found that his trial counsel did not render ineffective assistance by (1) failing to present testimony from certain fact witnesses, (2) improperly advising him of his right to testify at trial, and (3) failing to consult and present testimony from an expert in the field of child sexual abuse. We affirm the judgment of the habeas court.

The petitioner was convicted of risk of injury to a child in violation of General Statutes § 53-21 (a) (2) and was sentenced to twenty years of incarceration, execution suspended after fifteen years, and ten years of probation. *State* v. *Victor C.*, 145 Conn. App. 54, 58, 75 A.3d 48, cert. denied, 310 Conn. 933, 78 A.3d 859 (2013). The facts underlying the petitioner's conviction were set out by this court in his direct appeal. See id.

The petitioner is the victim's stepfather. Id., 56. In 2009, the victim was thirteen years old and living in a house with her grandparents, uncle, one or two younger siblings, and the petitioner. Id. Her mother, who was receiving drug treatment, was not living in the house. Id. One night, the petitioner entered the victim's bedroom. Id. After removing the victim's clothing, the petitioner rubbed his erect penis on her breasts and vagina. The victim did not stop the petitioner because she was scared. Id. The victim informed her mother and her uncle's girlfriend of the incident. Id., 56–57. At about the same time, the victim's special education teacher noticed a change in the victim's demeanor and confronted the victim. Id., 57. The victim disclosed the incident to her teacher, who was a mandated reporter of suspected child abuse. Id. The teacher took the victim to the school social worker, and the Department of Children and Families (department) was contacted. Id.

The victim was later interviewed by members of the department and, thereafter, interviewed and physically examined by a nurse practitioner at the child sexual abuse clinic at Yale-New Haven Hospital. Id. The petitioner subsequently was arrested and charged with multiple crimes.[1] Id. The jury, however, found him guilty only of risk of injury to a child.[2] Id., 58. This court affirmed his conviction on direct appeal. Id., 75.

The petitioner, who was then self-represented, filed an application for a writ of habeas corpus on October 18, 2012. On October 1, 2014, following the appointment of counsel, the petitioner filed an amended petition for a writ of habeas corpus in which he alleged that he was denied the effective assistance of counsel because counsel failed to call certain witnesses, failed adequately to cross-examine witnesses, failed to advise him

of his right to testify and did not permit him to testify, and failed to consult and present testimony from an expert knowledgeable about the effects of sexual assault on child victims. Following trial, the habeas court found that the petitioner's trial counsel did not render ineffective assistance by failing to call certain witnesses and that his cross-examination of the state's witnesses was not deficient. Although counsel advised the petitioner not to testify, the habeas court concluded that the petitioner made the ultimate decision not to testify and was not prejudiced by his counsel's advice. The habeas court denied the petition for a writ of habeas corpus but granted the petitioner certification to appeal.

We first set out our standard of review. "The standard of appellate review of habeas corpus proceedings is well settled. The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . [M]ixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . Whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by [an appellate] court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Jarrett* v. *Commissioner of Correction*, 108 Conn. App. 59, 69–70, 947 A.2d 395, cert. denied, 288 Conn. 910, 953 A.2d 653 (2008).

In the present case, the petitioner claims that he was denied his constitutional right to the effective assistance of his trial counsel. "To determine whether the petitioner has demonstrated that counsel's performance was ineffective, we apply the two part test established in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Claims of ineffective assistance during a criminal proceeding must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . The first prong requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the [s]ixth [a]mendment." (Emphasis in original; internal quotation marks omitted.) *Jarrett* v. *Commissioner of Correction*, supra, 108 Conn. App. 70.

"To satisfy the second prong of *Strickland*, that is counsel's deficient performance prejudiced his defense, the petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the

verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different. . . . In order to prevail, a petitioner must prevail on both *Strickland* prongs. . . . Put another way, [i]t is axiomatic that courts may decide against a petitioner on either prong, whichever is easier." (Citations omitted; internal quotation marks omitted.) *Gooden* v. *Commissioner of Correction*, 169 Conn. App. 333, 341, 150 A.3d 738 (2016).

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Adorno* v. *Commissioner*, 66 Conn. App. 179, 182–83, 783 A.2d 1202, cert. denied, 258 Conn. 943, 786 A.2d 428 (2001).

I

The petitioner first claims that the habeas court improperly found that his trial counsel did not render ineffective assistance by failing to investigate and present testimony from J and V, potential fact witnesses. We disagree.

The petitioner's theory of defense was fabrication on the part of the victim. At trial, trial counsel called only one witness, the petitioner's brother-in-law, D, to testify. At the habeas trial, the petitioner argued that if counsel had called his then wife, J, and his sister, V, their testimony would have contradicted the victim's testimony by providing evidence as to where the petitioner was living at the time of the assault and the nature of his relationship with the victim. Both witnesses were subpoenaed and available to testify at the criminal trial. The petitioner alleged that trial counsel's failure to present testimony from either woman fell below the standard of a reasonably competent criminal defense lawyer. Had either of them testified, he further alleged, there is a reasonable probability that the jury would have found him not guilty of risk of injury to a child.

At the habeas trial, trial counsel testified that he retained Gregory Senneck of J & G Investigations to investigate potential witnesses, including members of the petitioner's family, but personally spoke only to D and V. Trial counsel testified that he does not call many witnesses during a criminal trial if he concludes that

the state has not proven its case-in-chief. Trial counsel elected not to call J due to her serious battle with drug addiction. He also was of the opinion that she would have been "a loose cannon" on the witness stand. Trial counsel did not call V because she was the petitioner's relative; instead, he chose to have her husband testify.

The petitioner's habeas counsel was unable to locate J at the time of the habeas proceeding and, therefore, she did not testify. The petitioner's expert legal witness, Attorney Vicki Hutchinson, testified that she never interviewed J or V and did not know whether either one of them would have offered testimony that would have been helpful to the petitioner.

The habeas court rejected the petitioner's claim that trial counsel's failure to have either of the women testify constituted deficient performance or that the petitioner was prejudiced by his failure to do so. Because J did not testify at the habeas trial, the court was unable to determine what evidence she would have provided at the criminal trial or to evaluate her as a witness. The habeas court found that the petitioner produced no credible evidence to rebut the presumption of counsel's competence to make an appropriate strategic decision not to have J testify, given her "condition." The habeas court accepted trial counsel's testimony that J would not have been a reliable witness capable of limiting her testimony to the relevant issues. The habeas court concluded, therefore, that trial counsel's decision not to have her testify was strategic in nature.

V testified at the habeas trial that an investigator told her that it was not in the petitioner's best interests for her to testify because she was related to him. D, her then husband, would testify instead. The habeas court found that "[a]t best, [V's] testimony would have been cumulative to that of" D. The habeas court concluded that counsel's decision to present the testimony of the petitioner's brother-in-law, rather than that of his sister, was strategic in nature and conformed to the required standard of reasonableness for defense counsel. Moreover, the habeas court found that the petitioner failed to present any evidence that V's and J's testimony would have benefited the petitioner's defense.

"The failure of the petitioner to offer evidence as to what [a witness] would have testified is fatal to his claim. . . . The petitioner seeks to have us use hindsight with [regard] to his counsel's decision not to call the witnesses to testify. We will not do so. We have stated that the presentation of testimonial evidence is a matter of trial strategy. . . . The failure of defense counsel to call a potential witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Citation omitted; internal quotation marks omitted.) *Adorno* v. *Commissioner of Correction*, supra, 66 Conn. App. 186.

We have reviewed the record and the habeas court's memorandum of decision and conclude that the court properly found that trial counsel's trial strategy not to call the petitioner's former wife and sister did not constitute deficient performance. The petitioner's claim fails.

## II

The petitioner's second claim is that the habeas court improperly found that he was not prejudiced by his counsel's failure to advise him fully of his right to testify at trial and dissuading him from doing so. Given the particular facts of this case, we disagree.

The following facts are relevant to this claim. The petitioner did not testify at his criminal trial. In his amended petition for a writ of habeas corpus, he alleged that he did not testify on the advice of his trial counsel, which was unreasonable, and that if he had testified, he would have been found not guilty of any of the charges against him. By advising him not to testify, or not permitting him to testify, the petitioner claims that trial counsel failed in his duty to protect the petitioner's constitutional right to testify. He further alleged that if trial counsel had advised him of his right to testify, he would have testified to facts that challenged the victim's credibility and, therefore, the outcome of the proceeding would have been different.

It is the responsibility of trial counsel to advise a defendant of the defendant's right to testify and to ensure that the right is protected. "[T]he if and when of whether the accused will testify is primarily a matter of trial strategy to be decided by the defendant and his attorney." (Internal quotation marks omitted.) *Coward* v. *Commissioner of Correction*, 143 Conn. App. 789, 799, 70 A.3d 1152, cert. denied, 310 Conn. 905, 75 A.3d 32 (2013). The decision of whether to testify on one's own behalf, however, ultimately is to be made by the criminal defendant. *Wainwright* v. *Sykes*, 433 U.S. 72, 93 n.1, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977) (Burger, C. J., concurring). The petitioner's legal expert, Hutchinson, testified that the standard of competent representation is for defense counsel to advise the client of the advantages and disadvantages of testifying, but that the decision to testify is to be made by the client.

At the habeas trial, the petitioner testified that on more than one occasion he informed trial counsel that he wanted to testify. He also testified that trial counsel advised him that it was not in his best interest to testify because he was a sentenced prisoner. The petitioner acknowledged that he was serving a prison sentence that concerned several firearms related convictions and that he had two prior felony convictions related to conspiracy to commit murder and drugs. Trial counsel testified that he most likely advised the petitioner not to testify because he was serving a sentence on an unre-

lated matter and did not want that information to come out on cross-examination. He also testified that he "permits" criminal defendants to testify only if they insist and that the petitioner did not insist on testifying. Trial counsel, however, testified that the decision as to whether a criminal defendant testifies at trial is to be made by defense counsel.[3]

The habeas court found that trial counsel was a credible witness and that he did not provide deficient performance that resulted in prejudice to the petitioner. The court further found that trial counsel provided the petitioner with strategic and considered legal advice on the basis of, among other things, counsel's prior criminal trial experience, his assessment of the strength of the state's case at the close of its case-in-chief, his assessment of the petitioner's ability to testify on cross-examination without damaging the defense, and the petitioner's status as a sentenced prisoner. The habeas court credited trial counsel's testimony that he made the petitioner aware that the ultimate decision to testify belonged to the petitioner, regardless of legal advice. Also, the habeas court found that the petitioner did not insist on testifying. The habeas court also found that the petitioner had been convicted of felony charges and that if the convictions occurred within ten years of the underlying trial, the convictions could have been admitted into evidence as unnamed felony convictions. The habeas court, therefore, found that trial counsel's advice that the petitioner not testify was strategic in nature and not unreasonable, based on appropriate legal and factual considerations, and was sound given the totality of the circumstances. The habeas court concluded that trial counsel's representation was not deficient.

With respect to the petitioner's habeas testimony and his decision not to testify in his criminal trial, the habeas court found that the petitioner's testimony was thoroughly unconvincing. The court particularly discredited his testimony that trial counsel met with him only once and that he never spoke to anyone else from the defense. Moreover, the court found that the petitioner testified that he met with an investigator regarding his background and the allegations against him. The court credited the petitioner's testimony that trial counsel advised him that it was not in his best interest to testify given the sentence he was serving for firearms related offenses. The habeas court, therefore, found that it was not reasonably probable that the petitioner would have received a more favorable verdict, given his unconvincing "innocent explanation" for the victim's allegations against him, combined with the likelihood that cross-examination would have exposed him "as a drug abusing felon with no current positive relationship with his children  . . . ."

We have reviewed the record and conclude that the

habeas court's finding that trial counsel did not render ineffective assistance with respect to his advice to the petitioner about testifying was not improper and, even if his advice were deficient, the petitioner was not prejudiced by the advice.

## III

The petitioner next claims that the habeas court improperly found that trial counsel did not render ineffective assistance by failing to consult an expert in the field of child sexual abuse prior to trial or to present expert testimony in that regard. He argues that had trial counsel consulted an expert in the field of child sexual abuse, presented expert testimony on those matters, and effectively cross-examined witnesses in regard thereto, there is a reasonable probability that he would have been acquitted of the risk of injury to a child charge. More specifically, the petitioner contends that because trial counsel has no degree or experience in clinical or forensic psychology, his failure to consult an expert led to deficient cross-examinations of the state's professional witnesses and the victim herself. We are not persuaded.

The following facts are relevant to our resolution of the petitioner's claim. At the habeas trial, the petitioner presented expert testimony from Hutchinson and Nancy Eiswirth, a forensic psychologist, who testified about the topics trial counsel could have discussed with an expert and the manner in which such consultation would have contributed to his cross-examination of witnesses. Hutchinson testified that had trial counsel consulted with an expert in child sex abuse, he could have conducted a targeted, more "intense" cross-examination of nurse practitioner Janet Murphy regarding the results of her physical examination; special education teacher Maria Altobelli as to the fluctuations in the victim's demeanor; and forensic interviewer Kevin Sheehy about the victim's conduct and body language during the interview. Eiswirth testified that, with the services of an expert, trial counsel could have investigated further issues pertaining to the victim's testimony and disclosures during the forensic interview, such as the victim's negative affect or the leading nature of the questions she was asked. An expert also could have pointed out inconsistencies between the medical evidence and the victim's testimony. On the basis of Eiswirth's testimony, the petitioner argues, an expert not only could have strengthened trial counsel's cross-examination of the witnesses but also could have strengthened the defense, and the outcome would have been different.

Trial counsel testified that he did not consult a mental health expert, given his experience trying child sexual abuse cases and having attended seminars on the subject. Given his knowledge and experience, he believed that his review of the medical records and investigation

reports was sufficient to prepare him to cross-examine the victim and the state's professional and expert witnesses.

The habeas court credited trial counsel's testimony regarding his knowledge of how to try a sexual assault case, noting that it was validated by the trial record. The court found that the petitioner did not introduce convincing evidence that trial counsel was inexperienced in matters regarding child sexual abuse. Although Hutchinson testified that trial counsel could have done more to cross-examine the witnesses, she conceded that his cross-examination was "sufficient . . . ." The habeas court found, on the basis of Hutchinson's testimony, that trial counsel conducted an extensive cross-examination of the victim, managing to point out inconsistencies in her testimony. The court also found that trial counsel was at least as knowledgeable about the relevant issues as Hutchinson and more prepared at the criminal trial than Eiswirth, who testified that she had read only some of the trial transcripts.

The habeas court also cited the following relevant principles of law. A defense counsel's failure to call an expert witness alone "does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Eastwood* v. *Commissioner of Correction*, 114 Conn. App. 471, 481, 969 A.2d 860, cert. denied, 292 Conn. 918, 973 A.2d 1275 (2009). The fact that counsel could have inquired more deeply into certain matters, or failed to inquire into all areas claimed to be important, falls short of establishing deficient performance. *Velasco* v. *Commissioner of Correction*, 119 Conn. App. 164, 172, 987 A.2d 1031, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010).

In the present matter, the habeas court found that trial counsel pointed out the inconsistencies between the medical and investigation records, and the victim's testimony and that of others. That impeachment evidence supported the petitioner's defense that the victim had fabricated her allegations against the petitioner. "An attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy." *State* v. *Drakeford*, 63 Conn. App. 419, 427, 777 A.2d 202 (2001), aff'd, 261 Conn. 420, 802 A.2d 844 (2002). The habeas court noted that defense counsel should avoid alienating the jury by evoking sympathy for the victim. "[C]ross-examination is a sharp two-edged sword and more criminal cases are won by not cross-examining adverse witnesses, or by a very selective and limited cross-examination of such witnesses, than are ever won by demolishing a witness on cross-examination." (Internal quotation marks omitted.) *State* v. *Clark*, 170 Conn. 273, 287–88, 365 A.2d 1167, cert.

denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976). Finally, the habeas court found that the petitioner had failed to provide evidence that the outcome of the criminal trial would have been different had trial counsel consulted with an expert on child sexual abuse.

On the basis of our review of the record, the habeas court's analysis of the petitioner's claim, and its conclusion that trial counsel did not render deficient performance and that the petitioner was not prejudiced by trial counsel's failure to consult with an expert on child sexual assault, we conclude that the petitioner failed to carry his burden under *Strickland*.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] Initially, the state charged the petitioner with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), sexual assault in the second degree in violation of General Statutes § 53a–71 (a) (1), risk of injury to a child in violation of § 53-21 (a) (2), and threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). *State* v. *Victor C.*, supra, 145 Conn. App. 57. The state subsequently filed a substitute information in which it withdrew the charge of threatening in the second degree. Id.

[2] Following the state's case-in-chief, the court granted the petitioner's motion for a judgment of acquittal on the charge of sexual assault in the first degree. *State* v. *Victor C.*, supra, 145 Conn. App. 58. The jury was unable to reach a unanimous verdict on the charge of sexual assault in the second degree. Id.

[3] Trial counsel's belief that defense counsel is the one entitled to decide whether a criminal defendant testifies at trial is simply wrong. See *Wainwright* v. *Sykes*, supra, 433 U.S. 93 n.1 (Burger, C. J., concurring). Had he communicated that misguided belief to the petitioner, we would be constrained to decide that this was clear evidence of deficient performance. As the state points out, however, there is no evidence in the record that trial counsel did so. We also note that trial counsel acknowledged, upon further questioning, that it was counsel's responsibility to advise the client of all issues and let the client make the ultimate decision on whether to testify. The petitioner's reliance on *Commissioner of Correction* v. *Rodriquez*, 222 Conn. 469, 475, 610 A.2d 631 (1992), is misplaced. In *Rodriquez*, unlike the present case, the court concluded that the petitioner's lawyer " 'directed him not to testify, essentially.' " Id.