MICHAEL J. JARRETT *v.* COMMISSIONER OF
CORRECTION
(AC 28340)

Gruendel, Lavine and Pellegrino, Js.

Argued March 10—officially released May 27, 2008

*Michael Oh*, special public defender, for the appellant (petitioner).

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. This appeal concerns the third petition for a writ of habeas corpus filed by the petitioner, Michael J. Jarrett, and its protracted procedural history. The petitioner appeals from the judgment of the habeas court denying in part and granting in part his petition

for a writ of habeas corpus.[1] On appeal, the petitioner claims that the court improperly found that he did not receive ineffective assistance from counsel with respect to (1) his criminal trial and (2) the trial of his first petition for a writ of habeas corpus (first petition). We affirm the judgment of the habeas court.[2]

The event that eventually led to the petitioner's appeal occurred on September 6, 1983, when the petitioner, who was then in his thirties, stabbed to death his son's teenage baby-sitter with whom he was romantically involved, pursuant to a suicide pact. Although the petitioner inflicted injuries on himself, his suicide attempt obviously failed.[3] See *State* v. *Jarrett*, 218 Conn. 766, 767, 591 A.2d 1225 (1991). The petitioner was charged with murder in violation of General Statutes § 53a-54a (a). *State* v. *Jarrett*, supra, 767. The petitioner "interposed a multifaceted defense of mental disease or defect and elected to be tried to a three judge panel of the Superior Court. The court found him guilty as charged and sentenced him [on January 31, 1986] to a

---

[1] The court, *T. Santos, J.*, denied the petition as to the allegations of ineffective trial counsel. Judge Santos concluded that the representation of habeas counsel was deficient for failing to file an appeal from the judgment rendered on the first petition for a writ of habeas corpus filed in 1996 and restored the petitioner's appellate rights. The appeal pursuant thereto recently was decided. See *Jarrett* v. *Commissioner of Correction*, 106 Conn. App. 317, 942 A.2d 426 (2008) (affirming judgment of first habeas court, *W. Sullivan, J.*).

[2] The court granted the petition for certification to appeal.

[3] Our Supreme Court found that the panel of three Superior Court judges reasonably could have found that "[b]ecause of a substantial age disparity between the [petitioner] and [the] victim, the victim's mother filed a complaint that led to the [petitioner's] conviction of risk of injury to a child, for which he received a suspended sentence conditioned on his not seeing the victim. Distressed by the efforts to enforce their separation, which the [petitioner] and the victim knowingly tried to circumvent, they entered into a suicide pact. Each of them alluded to their plan of action in conversations with a mutual friend, shortly before the fatal day; the [petitioner] told the friend that he intended to do something that he characterized as dangerous." *State* v. *Jarrett*, 218 Conn. 766, 767–68, 591 A.2d 1225 (1991).

term of imprisonment of fifty years." Id. In July, 1990, the petitioner filed a direct appeal.[4] His conviction was affirmed by our Supreme Court. Id. The petitioner was represented by Carl D. Eisenmann, an assistant public defender, at trial and on direct appeal.

The petitioner retained private counsel, Ernest Diette, to file an amended petition for a writ of habeas corpus in June, 1996. In the first petition, the petitioner alleged in count one that Eisenmann's representation was ineffective because the petitioner was unable to communicate effectively with him and that Eisenmann refused to let him testify. In count two, the petitioner alleged that there was undue delay in filing his appeal due to systemic problems in the office of the public defender. The first habeas court, *W. Sullivan, J.*, denied the first petition, finding that the petitioner had not proven that Eisenmann's representation was ineffective or that the petitioner was prejudiced by the representation.[5] See *Jarrett* v. *Barbieri*, Superior Court, judicial

[4] In his direct appeal, the petitioner claimed that "the state adduced insufficient evidence of his commission of the underlying crime or to rebut his defense of mental disease or defect"; *State* v. *Jarrett*, supra, 218 Conn. 770; and if he were not entitled to an acquittal, he claimed, in the alternative, that he was entitled to a new trial because "the trial court deprived him of his rights under Practice Book § 760 [now § 40-19] and his constitutional rights to due process by relying in part on a statement 'on the issue of guilt' that he had made during his court-ordered examination by the state's psychiatrist, [Donald R.] Grayson." *State* v. *Jarrett*, supra, 773–74.

[5] In his memorandum of decision, Judge Sullivan found the following facts that are relevant to the issues in this appeal. In the criminal case, the "petitioner was offered a plea agreement whereby he would plead guilty to manslaughter, and he would receive a sentence of twenty years incarceration, execution suspended after fifteen years, with the right to argue for less. The petitioner testified that he was not going to plead guilty to something he was not guilty of. The petitioner testified that he believed that if you do something by mutual agreement, such as this suicide pact, then it is not murder. The petitioner testified that he believed that if he and his girlfriend could not live together here, then they would meet in another life. He stated that his girlfriend agreed with this belief 100 percent. The petitioner testified that his attorney brought to him the same aforementioned plea agreement offer at various times. . . . Eisenmann testified that he urged the petitioner to accept the plea agreement offer many times. . . . Eisenmann said the

district of New Haven, Docket No. CV-95-0371173-S (June 25, 1996). That judgment recently was affirmed in *Jarrett* v. *Commissioner of Correction*, 106 Conn. App. 317, 942 A.2d 426 (2008). See footnote 1.

The petitioner filed a third petition for a writ of habeas corpus in December, 2004.[6] In the second amendment to the third petition, filed by counsel, the petitioner alleged that Diette rendered ineffective assistance because he failed to (1) allege that Eisenmann did not question the petitioner's competency at the time he rejected the state's plea offer and (2) file a direct appeal from the denial of the first petition.

The court, *T. Santos, J.*, tried the third petition in May, 2006. She consolidated the claims alleged against Eisenmann, finding that they concerned his failure to have the petitioner's competency evaluated when he refused the state's plea offer. The claims against Diette in count one were derivative in that they related to Diette's failure to allege in the first petition that Eisenmann's representation was deficient for failing to have the petitioner's competency reevaluated.

The court found, on the basis of Eisenmann's testimony, that he was appointed as a public defender to represent the petitioner. In accordance with General Statutes § 54-56d,[7] Eisenmann had the petitioner's competency evaluated by Walter A. Borden, a psychiatrist.

---

plea bargain was a good offer." *Jarrett* v. *Barbieri*, Superior Court, judicial district of New Haven, Docket No. CV-95-0371173-S (June 25, 1996).

[6] The petitioner filed a second petition for a writ of habeas corpus in 2001. See *Jarrett* v. *Commissioner of Correction*, Superior Court, judicial district of New Haven, Docket No. CV-01-0459316 (January 16, 2004). The habeas court, *Corradino, J.*, granted the motion to dismiss filed by the respondent, the commissioner of correction, on the basis of the petition's being a successive petition on the issue of ineffective assistance of trial counsel. The petitioner's counsel agreed to the dismissal because the dismissal would not preclude the petitioner from filing another petition alleging that Diette rendered ineffective assistance on the first petition.

[7] General Statutes § 54-56d provides in relevant part: "(a) Competency required. Definition. A defendant shall not be tried, convicted or sentenced while the defendant is not competent. For the purposes of this section, a

In his report dated November 19, 1983, Borden found that the petitioner was competent to stand trial.[8] Borden's report stated, however, that "[t]he only area where there is a question related to his competency is in the area of a self-defeating attitude, which appeared to be a major theme in his life and which might contribute to his sabotaging whatever legal defense he and his counsel pursue. However, at present this does not appear to be the case but [s]hould be considered if at any point during the legal proceedings he appears to be acting inappropriately." Borden later performed a full psychiatric evaluation of the petitioner.

In addition, Eisenmann had the petitioner's competency evaluated by John A. Cegalis, a clinical psychologist, in June, 1984, and by Peter M. Zeman, a psychiatrist, and David F. Berry, a psychologist, whose evaluations were completed in February and June, 1985, respectively. All four of the petitioner's mental health experts found him to be psychotic, having schizophrenic disorder, paranoid type.[9] All four of them opined that the

defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense.

"(b) Presumption of competency. A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry.

"(c) Request for examination. If, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency. . . ."

[8] Borden made the following findings with respect to the petitioner. "[The petitioner], on examination, is a man of above average intelligence. He was able to give an account of understanding of the charges against him as well as a basic understanding of court procedures and roles of participants. He has an appreciation of possible penalties. He can provide counsel with a factual account of the issues involved in the case and he is able to work with counsel in his own defense."

[9] The four mental health experts who testified at the petitioner's criminal trial "described the [petitioner] as suffering from delusional beliefs about 'astroplaning,' reincarnation, and the existence of life on another planet. In

petitioner could neither appreciate the wrongfulness of his conduct nor conform his conduct to the requirements of the law on September 6, 1983. Donald R. Grayson, a psychiatrist, evaluated the petitioner on behalf of the state. He also found the petitioner to be psychotic but concluded that he was capable of conforming his conduct to the requirements of the law.

The court found that prior to the criminal trial, Eisenmann negotiated a plea offer under which the petitioner could enter a plea of nolo contendere or plead guilty to manslaughter under the *Alford* doctrine[10] on the basis of extreme emotional disturbance or on the basis of intending to injure but not to kill. Pursuant to the plea offer, the petitioner's sentence was to be limited to twenty years, and the prosecutor was to recommend fifteen years incarceration. The petitioner would have the right to argue for less and to go before the sentence review board. Eisenmann presented the offer to the petitioner, and the two of them discussed the offer a number of times. The petitioner understood that he was exposed to a sentence of sixty years or a commitment to Whiting Forensic Division of Connecticut Valley Hospital if he went to trial. Eisenmann advised the petitioner to accept the offer. The petitioner did not accept the offer because he wanted to go to trial and to explain why he killed the victim and why he was going to kill himself, too.[11] The petitioner told Eisenmann that he did not want to take legal responsibility for the victim's death because it was his intention to complete the suicide pact, despite the importance of the plea offer. The court also found that after he was sentenced, the

their view, the [petitioner's] psychopathology genuinely led him to believe that, in stabbing the victim, he was not harming her or causing her pain but was instead enabling her to be reunited with him in another place and in another form." *State* v. *Jarrett*, supra, 218 Conn. 772.

[10] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[11] Borden testified at the criminal trial that the petitioner was a suicide risk.

petitioner began to read about and to speak with others about reincarnation, leading him to decide that suicide was not the answer.

Walter C. Bansley testified as a criminal defense expert on behalf of the petitioner at trial on the third petition. He also reviewed the transcripts of the criminal trial and the trial of the first petition, Borden's report and the reports of the other mental health professionals. According to Bansley, the standard of care in a case in which an attorney thought that the client could not participate in formulating a defense strategy required the attorney to refer the criminal defendant for a competency evaluation. In Bansley's opinion, when the petitioner refused to accept the plea offer, Eisenmann should have referred the petitioner for another competency evaluation.

The court also heard testimony from Kenneth M. Selig, a psychiatrist and member of the Connecticut bar, who was retained by the petitioner to determine whether there were any psychiatric issues relevant to this matter. In forming his opinion, Selig reviewed the petitioner's mental health evaluations from before and after the petitioner's arrest, and from before and after the criminal trial. He read the transcripts of the criminal trial and the trial of the first petition. Selig interviewed the petitioner in 2002 and one week prior to the habeas trial before Judge Santos. Selig opined that the petitioner was psychotic between 1983 and 1985, at a minimum. He further opined that there was a nexus between the psychosis and the issue of competency at the time the petitioner was presented with the plea offer and that the petitioner was not competent to appreciate the offer. According to Selig, the petitioner was not able to pull himself out of the dominant psychotic thinking in order to evaluate rationally the cost and benefits of

the plea offer and going to trial.[12] The court did not assign much weight to Selig's testimony, however, finding that Selig evaluated the petitioner almost twenty years after the state extended the plea offer and that the petitioner fully appreciated the offer.

The court concluded that Eisenmann thoroughly investigated the criminal case and was prepared to defend the charges against the petitioner on the basis of the petitioner's mental disease or defect. The case need not have been tried, however, as the state made the petitioner a plea offer. Eisenmann conveyed the offer to the petitioner on numerous occasions, emphatically advising him to accept the offer. Eisenmann, however, did not have the power to enter a plea that was inconsistent with the petitioner's wishes. "[T]he constitutional rights of a defendant cannot be waived by his counsel under such circumstances [where the defendant does not want to plead guilty]. . . . [This] would shut off the defendant's constitutional right to confront and cross-examine the witnesses against him which he would have an opportunity to do under a plea of not guilty." *Brookhart* v. *Janis*, 384 U.S. 1, 7–8, 86 S. Ct. 1245, 16 L. Ed. 2d 314 (1966).

The petitioner's testimony at the trial on the third petition was consistent with his testimony at trial on the first petition. The petitioner did not want to enter a guilty plea because he wanted to tell his side of the story and to convince the fact finder that he was not guilty of murder.[13] To convince the court that he was

---

[12] In its memorandum of decision, the court stated that implicit in the petitioner's claim that Eisenmann's assistance was ineffective is the notion that the reasonableness of the petitioner's rejecting the state's plea offer can be measured by the difference between the possible maximum sentence for the murder charge then pending and the sentence offered by the state for a plea of guilty of manslaughter.

[13] The petitioner, in fact, did not testify at the criminal trial on the basis of Eisenmann's advice that he should not testify. Eisenmann testified at the trial in this case that he advised the petitioner that he would come across to the trial court as being too intelligent and derail the foundation of mental

not guilty, the petitioner alleged an affirmative defense that he was not guilty by reason of mental disease or defect. Four expert witnesses, psychologists and psychiatrists, evaluated the petitioner and testified on his behalf at the criminal trial. The state's expert, Grayson, agreed in large part with the petitioner's experts, but he did not agree that the petitioner was not capable of conforming his conduct to the requirements of law.

On the basis of the evidence presented at the habeas trial in this case, the court found that there was no evidence that Eisenmann's assessment and conclusions, which resulted in no further competency evaluations of the petitioner, was deficient performance. To the contrary, the petitioner's preparation for trial, including meetings with mental health experts for purposes of evaluation, underscored that the petitioner was able to work with counsel and was capable of assisting in his defense. Eisenmann never detected a change in the petitioner's demeanor, attitude or line of reasoning from the time he first met him. The court found that there was no evidence that the petitioner did not understand the proceedings or was unable to assist in his defense. The petitioner was clear that he did not want to accept the plea offer because he wanted to go before the panel of three judges and explain the situation.

On the basis of its findings, the court concluded that the petitioner could not prevail on the claims of ineffective assistance of trial and habeas counsel on the issue of a competency evaluation at the time the petitioner rejected the plea offer. This conclusion is supported by the court's finding that Eisenmann reasonably relied on Borden's opinion that the petitioner was competent

disease or defect laid by the four mental health professionals. The court concluded that Eisenmann's advice was not deficient performance of trial counsel. The petitioner has not challenged that conclusion on appeal.

to stand trial, and monitored the petitioner's behavior and observed no changes indicative of a self-defeatist attitude. Eisenmann reasonably believed that the petitioner's rejection of the plea offer did not evidence incompetence because the petitioner believed that he was not guilty and wanted to tell his side of the story. The court also found that the petitioner rejected the plea offer because he wanted to tell his side of the story, not because he did not care about his defense. The petitioner consistently stated that reason from the time he met with Eisenmann until he testified at the trial of his first petition and then in this case. The petitioner therefore failed to demonstrate that Eisenmann's performance was deficient.

As to the claim that Diette provided ineffective habeas assistance for failing to allege that Eisenmann's representation was ineffective for failing to obtain a second competency evaluation, it was derivative of the claim against Eisenmann and, thus, failed, too. See *Denby* v. *Commissioner of Correction,* 66 Conn. App. 809, 812–13, 786 A.2d 442 (2001) ("To succeed in his bid for a writ of habeas corpus, the petitioner must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective. . . . Only if the petitioner succeeds in what he admits is a herculean task will he receive a new trial." [Citations omitted; internal quotation marks omitted.]), cert. denied, 259 Conn. 908, 789 A.2d 994 (2002); but see footnote 1.

"The standard of appellate review of habeas corpus proceedings is well settled. The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations,

are not facts in this sense. . . . Whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by [an appellate] court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 576, 941 A.2d 248 (2008). The petitioner does not claim that the court's findings are clearly erroneous.

To determine whether the petitioner has demonstrated that counsel's performance was ineffective, we apply the two part test established in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Claims of ineffective assistance during a criminal proceeding "must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . The first prong requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the [s]ixth [a]mendment." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 285 Conn. 575–76.

The substance of the petitioner's claim on appeal is that Eisenmann failed to recognize the self-defeating attitude that Borden had forewarned. The petitioner does not argue that his failure to accept the plea offer is evidence of incompetence itself but that it is evidence that he did not care about his defense. The shortcoming with that argument is that the court found that the petitioner rejected the plea offer, not because the petitioner did not care about his defense, but because he did not think that he was guilty of murder and wanted

to explain his side of the story to the trial court, which suggests that he cared a good deal about his defense. The court found that Eisenmann was aware of Borden's admonition and monitored the petitioner's behavior throughout his representation. At no time did the petitioner's behavior exhibit self-defeat.

The petitioner also argues that at the time he rejected the plea offer, he did not have the capacity to make reasoned choices due to his apathy and delusional condition. The theme of apathy repeats itself in the petitioner's argument and is heavily reliant on his trial testimony. He testified that the plea offer did not mean anything to him. "I wanted to go to trial. I wanted to be able to have a chance to explain what had happened, why we did what we did. And if I had taken the offer, that wouldn't have happened. And I planned on killing myself at the end, anyway, to join her, so it didn't matter if they gave me five minutes or 500 years." This testimony was sufficient for the habeas court to have found that the petitioner rejected the plea offer because he wanted to explain himself to the trial court. Moreover, the petitioner's statement concerning his desire to join the victim does not reflect apathy but a mission and desire to fulfill his pact with the victim.

In the final analysis, the petitioner presented the court with no persuasive evidence that he was not competent when he rejected the plea offer. Selig had no opinion as to Borden's November 19, 1983 finding that the petitioner was competent to stand trial. Our statutes define incompetency as the inability to understand the proceedings or to assist in one's defense. See *State* v. *Bagley*, 101 Conn. App. 653, 654–55, 922 A.2d 1128 (2007). The court found that the petitioner understood the charges against him, the role of the court, the prosecutor and his counsel, and the risks of being found guilty or being confined to the Whiting Forensic Division of Connecticut Valley Hospital. The court found explicitly

that the petitioner cooperated with counsel and helped to prepare for trial by undergoing numerous psychiatric and psychological evaluations in support of the affirmative defense of mental disease or defect.

Moreover, the petitioner presented no evidence to overcome the presumption of his competency at the time he rejected the plea offer. See General Statutes § 54-56d (b). The respondent, the commissioner of correction, has pointed out that to overcome the presumption of competency, the petitioner was required to demonstrate that there was a reasonable doubt about his competency at trial. See *State* v. *Ross*, 269 Conn. 213, 272, 849 A.2d 648 (2004). A reasonable doubt is established by means of substantial evidence, not mere allegations of incompetence. Id. Although Selig testified that the petitioner was incompetent, as noted, the court did not give much weight to his testimony, given that he interviewed the petitioner twenty years after the fact. The finder of fact is the arbiter of credibility. *Morales* v. *Commissioner of Correction*, 99 Conn. App. 506, 510, 914 A.2d 602, cert. denied, 282 Conn. 906, 920 A.2d 308 (2007). The finder of fact may believe, some, none or all of the testimony of an expert witness. *State* v. *Cuesta*, 68 Conn. App. 470, 484, 791 A.2d 686, cert. denied, 260 Conn. 914, 796 A.2d 559 (2002). Even,though a criminal defendant is mentally ill, his illness is not per se evidence of incompetence. *State* v. *Ross*, supra, 273. Even attempted suicide does not establish reasonable doubt as to competence. *Myers* v. *Manson*, 192 Conn. 383, 388, 472 A.2d 759 (1984).

Our Supreme Court's decision in *Ross* is helpful to resolving the issue before us now. That case demonstrates that a competent, but mentally ill, criminal defendant may choose not to follow the advice of counsel and to choose a course others think clearly is not in his best interest. "The defendant's suicide attempt, his attempt to stipulate to the imposition of the death

penalty and his counsel's statements at the hearing on the motion for a competency examination do not compel a different conclusion [that the defendant was unable to assist counsel]." *State* v. *Ross*, supra, 269 Conn. 273. "Similarly, the defendant's past attempts to stipulate to the imposition of the death penalty did not raise a reasonable doubt as to his competency, especially in light of the fact that he was found competent . . . at the time he was pursuing the stipulation." Id. Our Supreme Court concluded with respect to the defendant in *Ross* that he "not only understood the nature of the proceedings but also was able to communicate with and assist his counsel." Id. The lesson is that courts may not construe a defendant's decision to proceed to trial as evidence of incompetence merely because others conclude the decision is not in the defendant's best interest. In this case, the court found that the petitioner was able to communicate with Eisenmann and to assist with the defense. On the basis of our review, we conclude that there is substantial evidence in the record to support those findings and legal conclusions.

For these reasons, the court properly concluded that Eisenmann's representation was not deficient for failing to secure a second competency evaluation of the petitioner. The claim against Diette that is grounded in the question of the petitioner's competence is derivative of the claims against Eisenmann and also fails. See *Lozada* v. *Warden*, 223 Conn. 834, 842, 613 A.2d 818 (1992).

The judgment is affirmed.

In this opinion the other judges concurred.