******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GERALDINE MOYE *v.* COMMISSIONER
OF CORRECTION
(AC 36851)

Keller, Prescott and Cremins, Js.

*Argued April 4—officially released July 12, 2016*

(Appeal from Superior Court, judicial district of New Haven, Hon. Thomas J. Corradino, judge trial referee [judgment].)

*Raymond L. Durelli*, with whom, on the brief, was *Michael Zariphes*, assigned counsel, for the appellant (petitioner).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David Clifton*, assistant state's attorney, for the appellee (respondent).

*Opinion*

CREMINS, J. The petitioner, Geraldine Moye, appeals from the judgment of the habeas court denying her amended petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the habeas court improperly concluded that (1) her criminal trial counsel, Attorney Paul V. Carty, did not render ineffective assistance by failing to fully investigate her competency or to request a competency hearing before she entered her plea of nolo contendere, and (2) her state and federal due process rights were not violated because "her nolo contendere plea was invalid in that [she was] incompetent at the time that she entered the plea . . . ." We affirm the judgment of the habeas court.

The following factual and procedural history is relevant to the resolution of the petitioner's appeal. In January, 1994, the petitioner was charged with two counts of arson in the first degree in violation of General Statutes § 53a-111. The petitioner made a statement to the police in which she confessed to setting a fire in her home in the hope that she could use the insurance proceeds to make repairs to the furnace. As a result of a plea agreement, she entered a nolo contendere plea to a single substituted charge of arson in the second degree in violation of General Statutes § 53a-112. On October 14, 1994, the court, *Ronan, J.*, sentenced the petitioner to seven years imprisonment, suspended after two years, with three years of probation to follow.

In 1998, the petitioner filed a pro se petition for a writ of habeas corpus. Appointed counsel filed an amended petition in September, 2000. The amended petition contained two counts. The first claimed that trial counsel had failed to investigate adequately the petitioner's mental state in order to ensure that her plea was knowing, intelligent, and voluntary. The second claimed that her plea had been obtained in violation of her state and federal rights to due process of law because it had not been knowingly, intelligently, and voluntarily made. The respondent, the Commissioner of Correction, replied on September 27, 2000, denying the allegations in the petition.

The habeas trial was held on July 1, 2013.[2] The petitioner and trial counsel testified, and the court admitted evidence, including various psychological evaluations of the petitioner that trial counsel had obtained prior to the petitioner's plea. Following posttrial briefing and oral argument, the court issued a memorandum of decision on March 27, 2014, in which it concluded that trial counsel's performance was not ineffective[3] and that the petitioner had failed to present sufficient evidence to demonstrate that she was incompetent at the time of her plea. The petitioner then filed the present appeal challenging the habeas court's determinations on both grounds. She also restated her first claim to assert both

that trial counsel was ineffective for failing to investigate her mental state and that he was ineffective for failing to move for a competency hearing pursuant to General Statutes (Rev. to 1993) § 54-56d.[4] The respondent has not objected to this change, and has addressed both aspects of the ineffectiveness claim. Additional facts will be set forth as necessary.

I

The petitioner's first claim is that her trial counsel rendered ineffective assistance in that he failed to investigate adequately her competency and mental state, and failed to request that the court order a competency hearing pursuant to § 54-56d. The petitioner claims that by failing to do so, trial counsel failed to ensure that she was competent to stand trial and to make an intelligent, knowing, and voluntary decision on whether to plead nolo contendere. This contention hinges on several psychological evaluations regarding the petitioner's mental health, which her trial counsel obtained and which the petitioner now claims should have alerted trial counsel to the need to investigate her competency further or to move for a competency hearing. The respondent asserts that the evaluations do not suggest incompetence and that trial counsel's testimony regarding his interactions with the petitioner and his interpretation of the evaluations, which the trial court found credible, demonstrate that he did not have cause to either further investigate the petitioner's competency or to request a competency hearing.

The standard of review pertaining to claims of ineffective assistance of counsel is well settled. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 313 Conn. 360, 375, 98 A.3d 23 (2014), cert. denied sub nom. *Anderson* v. *Semple*, U.S. , 135 S. Ct. 1453, 191 L. Ed. 2d 403 (2015).

"[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings." (Internal quotation marks omitted.) Id. "[A] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the

range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 264, 112 A.3d 1 (2015). "[I]n the context of a guilty plea . . . to succeed on the prejudice prong the petitioner must demonstrate that, but for counsel's alleged ineffective performance, the petitioner would not have pleaded guilty and would have proceeded to trial." (Internal quotation marks omitted.) *Carraway* v. *Commissioner of Correction*, 317 Conn. 594, 600 n.6, 119 A.3d 1153 (2015). "Because both prongs of [*Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] must be demonstrated for the petitioner to prevail, failure to prove either prong is fatal to an ineffective assistance claim." *Jefferson* v. *Commissioner of Correction*, 144 Conn. App. 767, 773, 73 A.3d 840, cert. denied, 310 Conn. 929, 78 A.3d 856 (2013).

The following additional facts are relevant to our resolution of the petitioner's claim of ineffective assistance of counsel. At the habeas trial, trial counsel testified that he had referred the petitioner for psychological evaluation in order to determine whether "there was a viable defense of mental disease or defect." When asked why he had referred her for evaluation, trial counsel indicated that in general, he referred defendants for evaluation if he thought, upon meeting them, that there might be some mental illness, and, in particular, that the petitioner's confession "was kind of weird." He then stated that he received several reports and letters from two doctors regarding their evaluations of the petitioner.

The reports and letters discuss multiple testing days with a psychologist, Cheryl Gelernter, and a neurologist, James C. McVeety, from March through May, 1994. The final letter from Gelernter to trial counsel stated that the "test data provide compelling evidence for the conclusion that [the petitioner] has both an organic mental disorder, probably temporal lobe epilepsy, and a schizotypal personality disorder." It described her reasoning ability as follows: "[T]here was considerable evidence of serious problems in thinking throughout the test battery. These difficulties tend to interfere with logic and promote faulty judgment, substantially increasing the probability of errors in decision-making." It continued to state that the petitioner "was not adequately equipped to cope with the severe psychological stressors she experienced in the months preceding the fire," and that her "irrational behavior at the time of the fire was influenced by firmly embedded and pervasive characteristics of her dysfunctional personality." It concluded by recommending that the petitioner be referred for treatment to address the outlined problems.

The letters also referenced test reports and letters between the petitioner's doctors, which also were sub-

mitted into evidence. The first report by Gelernter stated that trial counsel "referred [the petitioner] to assist in planning her defense to a charge of arson in the first degree." Trial counsel "requested an evaluation of the [petitioner's] mental health at present and at the time of the fire and an opinion as to whether or not she has a mental disorder that might have affected her behavior in this incident." The report stated that the petitioner had a mental state in the normal range, but only fair insight into her problems and impaired judgment, that she was suffering severe psychological stress and was depressed. It also stated that she was "alert, and oriented to time, place, and person," that "[n]o deficits in productivity of thought or speech were noted nor does [the petitioner] seem to hold any well-developed delusions," and that "[n]o deficits in immediate, short-term, or remote memory were noted . . . ." The petitioner reported olfactory hallucinations, consisting of aromas of dead flowers or marijuana, which she experienced years apart. Gelernter's second report stated that "[i]n times of stress, she retreats into fantasy and may have difficulty distinguishing fantasy from reality. She lacks problem-solving skills and is likely to respond to stress in impulsive and immature ways." The petitioner was referred to McVeety for an electroencephalogram to determine whether she suffered from temporal lobe epilepsy. McVeety stated in a letter to Gelernter that he performed the electroencephalogram and determined that his findings were consistent with temporal lobe epilepsy, but that further studies were necessary "to determine if there is an indication to begin treatment . . . ." Gelernter's final report also stated that the petitioner's "overall level of intellectual functioning is within the average range."

Trial counsel confirmed that he had read the letters and reports. He testified that the petitioner had a number of mental health issues and "that it might have been possible to mount a defense of mental disease or defect. But it—I didn't think that it would rise to a level of the legal standard for mental disease or defect." When asked why the evaluations did not give him cause for concern that the petitioner might not be capable of assisting him with a defense, he testified: "Because read through the language that was used. Um, it was—it's language that she may do this, or she might do this, or she's likely to do this, as opposed to a situation where they definitively say she does not understand X, Y and Z, or she cannot do this, or she cannot make this— this connection.

"So, there's a lot of tenuous language that was used in those reports, and for that reason, you know, I mean, there was just—just so—too many outs from a medical standpoint. So that if I tried to pin a doctor down to say that, could she do this, or could she make the connection between her actions and the consequences? It would leave me hanging out there."

The court then asked trial counsel whether he ever thought a competency examination might be warranted and he testified: "Uh, at the time, I don't believe that I did. You know, I think that on the basis of—of what I received, I felt that perhaps, she was, you know, she might have been borderline, but I—I thought that. And—and based on my interaction with her, she was able to assist me, and I was able to—she was able to understand what was going on. And I just didn't think that it would have been beneficial so."

On cross-examination, trial counsel testified regarding why his interactions with the petitioner did not, as the respondent's counsel stated, "raise a flag about competency": "I—she was able to understand everything that was going on. She understood—understood what she did in terms of not just the actions of setting the fire, but in terms of her confession, and, um, uh, the, um, ramifications of all of that would have on her case.

"She was able to discuss rationally with me potential defenses. We—we also discussed the results of the psychological evaluations and whether or not that would rise to the level of—of, you know, uh, a defense against conviction of the crimes charged.

"And she was able to interact with me with, [in] regard to plea bargaining. And I just, you know, so she—she understood who everybody was, you know, all the players were. You know, what she was charged with. She was able to assist me, you know, with her defense."

The court then asked trial counsel about the petitioner's competency regarding whether to plead guilty or go to trial, and trial counsel answered that he "didn't have any reason, even given the reports that were prepared, I didn't have any concerns with regard to her ability to make a decision about pleading guilty, or going to trial. . . . She—she clearly understood that, you know, if she went to trial, and she lost, she'd be a whole lot worse off than if she was able to work it out for a lesser plea." Finally, trial counsel testified that he was aware of the standards for competency, that his interactions with the petitioner demonstrated that she could assist in her own defense, and that she did in fact assist in her own defense.[5]

Trial counsel also testified that he shared the information from the mental health evaluations with the prosecutor, and that thereafter the prosecutor agreed to reduce the charges. The sentencing transcript demonstrates that trial counsel also remarked on her "psychiatric problems" during the sentencing hearing. He testified at the habeas trial that, under the arson in the first degree charge, the petitioner faced a mandatory minimum sentence of ten years imprisonment, while under the arson in the second degree charge to which

she pleaded nolo contendere, the maximum period of incarceration would be five years imprisonment with the right to argue for less. During sentencing, the judge also remarked on the petitioner's mental health issues prior to sentencing her to seven years imprisonment, suspended after two years, with three years of probation. The judge also ruled that a special condition of her probation would be that she "continue with any program of psychological or psychiatric counseling that the [Office of Adult] Probation . . . feels appropriate for her at that time."

The petitioner also testified at the habeas trial. In her testimony, she did not describe any interactions with trial counsel or the judge which should have suggested to trial counsel that she was incompetent. She testified that she did "[n]ot really" remember speaking with trial counsel regarding the plea, and acknowledged that the judge had asked her questions prior to the plea that she answered on the record, but did not recall specifics.

The habeas court concluded its analysis of the petitioner's claim of ineffective assistance of counsel as follows: "In the last analysis, [the psychological evaluations present] contrasting views on the viability or effectiveness of [the petitioner's] thinking process which cannot overcome [trial counsel's] testimony that he detected nothing in his contacts with [the petitioner], which, in the last analysis, warranted a competency question that was necessary to investigate. As noted, many of the contacts and interaction between the doctor and the petitioner in relation to the testing process indicate [that the petitioner] knew what the object of the testing was and had the ability to understand [and] fully cooperate with that process. It would be difficult to conclude that [the petitioner] could do that but yet be unable to cooperate with and understand her lawyer in preparing the case, and understand any advice relative to a change of plea.

"Also, this was not a lawyer who wanted merely to get a speedy resolution of the case at all costs. He managed to achieve a very favorable resolution considering the seriousness of the charge and was quite aware of mental health issues, sending her to be involved in a process which consumed several testings, evaluations, and meetings over several weeks, generating a report, two evaluations and two letters from the doctor to himself. This is mentioned as a reason the court has to credit this lawyer's believability about his conclusion to not pursue a § 54-56d hearing based on the testimony he offered." The habeas court therefore determined that the petitioner had not demonstrated that counsel was ineffective. We agree.

Section 54-56d (a) provides that "[a] defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the pro-

ceedings against him or to assist in his own defense." General Statutes (Rev. to 1993) § 54-56d (a). Section 54-56d (b) provides in relevant part that "[a] defendant is presumed to be competent. The burden of proving that the defendant is not competent by clear and convincing evidence and the burden of going forward with the evidence are on the party raising the issue. . . ." General Statutes (Rev. to 1993) § 54-56d (b).[6] "The standard we use to determine whether a defendant is competent . . . is whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." (Citations omitted; internal quotation marks omitted.) *State* v. *Dort*, 315 Conn. 151, 170, 106 A.3d 277 (2014). "[T]he same standard used to determine competency to stand trial also applies to determine competency to plead guilty . . . ." *State* v. *Day*, 233 Conn. 813, 823, 661 A.2d 539 (1995), overruled in part on other grounds by *State* v. *Connor*, 292 Conn. 483, 528 n.29, 973 A.2d 627 (2009).

"A defendant who suffers from a mental or emotional impairment is not necessarily incompetent to enter a guilty plea because [c]ompetence . . . is not defined in terms of mental illness. An accused may be suffering from a mental illness and nonetheless be able to understand the charges against him and to assist in his own defense . . . ." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 451–52, 936 A.2d 611 (2007).

"In determining whether a defendant's competence has been sufficiently called into doubt so as to necessitate a hearing on the matter, the United States Supreme Court has cautioned that there is no single approach or factor that is most important in establishing competency or lack thereof. See *Drope* v. *Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975). [E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts." (Internal quotation marks omitted.) *State* v. *Dort*, supra, 315 Conn. 162–63.

The petitioner has raised two related but distinct claims regarding her trial counsel's effectiveness. One is that trial counsel should have moved for a competency hearing. Our Supreme Court has stated that § 54-56d

requires "a competency evaluation any time a reasonable doubt is raised regarding the defendant's competency. . . . To establish such reasonable doubt, the defendant must present substantial evidence, not merely allegations, that he is incompetent." (Citation omitted; internal quotation marks omitted.) *State* v. *Ross*, 269 Conn. 213, 272, 849 A.2d 648 (2004). To demonstrate that trial counsel was ineffective in this respect, the petitioner must show that trial counsel had substantial evidence to raise a reasonable doubt regarding her lack of competence, but failed to act on it. The second claim is that trial counsel should have investigated the petitioner's competence further. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (Internal quotation marks omitted.) *Lorthe* v. *Commissioner of Correction*, 103 Conn. App. 662, 706, 931 A.2d 348, cert. denied, 284 Conn. 939, 937 A.2d 696 (2007). To demonstrate that trial counsel was ineffective in this respect, the petitioner must show that trial counsel had sufficient evidence regarding her lack of competence to require him to investigate the petitioner's competence further, but failed to do so. Both inquiries required the habeas court to analyze the evidence presented by the petitioner to determine what evidence trial counsel likely had when making these two decisions. We will therefore analyze the psychological evaluations, trial counsel's own testimony regarding his interactions with the petitioner, the petitioner's statements regarding her interactions with trial counsel and overall presentation during the period leading up to her plea, and any information regarding how other participants in the process, specifically, the prosecutor and judge, perceived the petitioner.

In the present case, trial counsel stated that he sought an opinion on whether there was "a viable defense of mental disease or defect." We take this to be a reference to General Statutes § 53a-13, which provides in relevant part that "[i]n any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law." The evaluations themselves state that trial counsel referred her to Gelernter to assist in planning a defense, without stating what defense, and that trial counsel "expressed concerns about [the petitioner's] current mental status and her mental status at the time of the incident . . . ." Trial counsel's purpose in requesting the reports was to determine whether a lack of capacity defense would be viable, but the evaluations themselves contain a more generalized evaluation of the petitioner's mental state. Thus, although they were not requested in order to assess competence, the evalu-

ations do contain a picture of the petitioner's then-current mental state. The evaluations demonstrate that the petitioner suffered from some degree of mental illness, which could, at times, impair her ability to think clearly, particularly in stressful situations. Our review of the evaluations does not suggest that a competent attorney would determine, upon reading them, that further investigation of his client's competency, or a competency hearing, was necessary.

Trial counsel's opinion of the petitioner's competency was also informed by his own interactions with his client. "[T]he opinion of the defendant's counsel [as to his or her client's competency] is unquestionably a factor which should be considered when a trial court is attempting to discern whether a request for a competency examination has merit. . . . The weight to be assigned to the defense counsel's opinion must be assessed on a sliding scale; in any given case it will be largely dependent on whether the attorney's opinion is based on specific facts related to the defendant's then current competency or lack thereof." (Citations omitted; internal quotation marks omitted.) *State* v. *Dort*, supra, 315 Conn. 172; see also *Maldonado* v. *Commissioner of Correction*, 141 Conn. App. 455, 464, 62 A.3d 528 (2013) (habeas court denied petition based on trial and prior habeas counsel's testimony that petitioner was competent). In *Jarrett* v. *Commissioner of Correction*, 108 Conn. App. 59, 68–69, 73, 947 A.2d 395, cert. denied, 288 Conn. 910, 953 A.2d 653 (2008), we upheld the habeas court's conclusion that trial counsel reasonably relied on a prior medical opinion and his own observations of the petitioner to determine that the petitioner was competent and had not manifested the "self-defeatist attitude" that the doctor had previously said might pose difficulties.

On the basis of the language of the evaluations and trial counsel's own interactions with his client, trial counsel determined that investigating the petitioner's competence further or moving for a competency hearing was unnecessary because the petitioner was capable of understanding the proceedings and assisting in her defense. The habeas court credited his testimony. "As an appellate court, we do not reevaluate the credibility of testimony, nor will we do so in this case. The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Sargent* v. *Commissioner of Correction*, 121 Conn. App. 725, 736, 997 A.2d 609, cert. denied, 298 Conn. 903, 3 A.3d 71 (2010). We conclude that a reasonably competent attorney who read these reports and interacted with his client in the manner described would not be required to investigate further or to move for a competency hearing.

The petitioner's own testimony at the habeas pro-

ceeding does not suggest that she gave any indication of incompetence to her attorney or the presiding judge. She did not testify as to anything she said or did that would have suggested to her attorney, the trial judge, or the doctors who interviewed her that she was incompetent.

Finally, the fact that the trial judge and the prosecutor also reviewed the psychological evaluations provides further support that trial counsel's decision not to move for a hearing was reasonable. The prosecutor and the judge each may independently assess the competence of a defendant and move for or order a competency hearing. See *State* v. *Dort*, supra, 315 Conn. 163–64 ("[a]ny party before the court—including the court itself—may raise the issue of the defendant's competency at any time during a criminal proceeding by requesting that the court order a competency examination"). Trial counsel stated that the prosecutor offered the plea deal after reviewing the medical reports, and the judge noted the petitioner's mental impairments in his sentencing remarks. Although the petitioner did not provide either the habeas court or this court with the plea hearing transcript, she acknowledged that she answered the judge's questions when pleading.[7] See *Hunnicutt* v. *Commissioner of Correction*, 83 Conn. App. 199, 207, 848 A.2d 1229 (analysis of petitioner's answers during plea hearing component of performance prong analysis regarding trial counsel's claimed failure to assess petitioner's mental state prior to plea), cert. denied, 270 Conn. 914, 853 A.2d 527 (2004). This provided the judge, along with trial counsel and the prosecutor, with another opportunity to assess her competence.

On the basis of all of the foregoing, we conclude that the habeas court properly determined that the petitioner failed to demonstrate that her trial counsel rendered ineffective assistance, either by failing to investigate the petitioner's competence further or by failing to move for a competency hearing.

II

The petitioner claims that the evidence she presented at the habeas trial demonstrates that she was incompetent when she entered her plea, and, therefore, incapable of entering her plea knowingly, voluntarily, and intelligently. In support of this contention, the petitioner points to the fact that trial counsel referred her for investigation of a mental disease or defect defense, that trial counsel said that her confession was "weird," that the petitioner testified that she was not acting in her own best interest, and that she entered her plea of nolo contendere because she wanted to commit suicide by going to jail. The respondent contends that trial counsel testified that the petitioner understood the proceedings and that the habeas court credited this testimony. The respondent further argues that there was no evidence

that the plea canvass was incomplete, and that the sentencing transcript provides further support that the petitioner's plea was knowing, intelligent, and voluntary. The respondent therefore asserts, and we agree, that the habeas court properly denied the petition on this ground.

In order to plead guilty, a defendant must be competent, and the plea must be knowing and voluntary; the knowing and voluntary requirement is an additional requirement on top of the basic competency standard. *Godinez* v. *Moran*, 509 U.S. 389, 400, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993). "The purpose of the knowing and voluntary inquiry is to determine whether the defendant actually understands the significance and consequences of a particular decision and whether the decision is uncoerced. . . . The focus of a competency inquiry, by contrast, is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings." (Internal quotation marks omitted.) *State* v. *Stiggle*, 155 Conn. App. 117, 122, 106 A.3d 972, cert. denied, 316 Conn. 904, 111 A.3d 472 (2015). "The touchstone of competency . . . is the ability of the defendant to understand the proceedings against him and to assist in his own defense." *Taylor* v. *Commissioner of Correction*, supra, 284 Conn. 452. A determination of whether a plea was knowing and voluntary requires a plenary review of the circumstances surrounding the plea, particularly the plea canvass. See *Almedina* v. *Commissioner of Correction*, 109 Conn. App. 1, 6, 950 A.2d 553, cert. denied, 289 Conn. 925, 958 A.2d 150 (2008). At the same time, "[i]t is not our role to reevaluate the credibility of witnesses or to overturn factual findings of a habeas court unless they are clearly erroneous." *Ramos* v. *Commissioner of Correction*, 67 Conn. App. 654, 659, 789 A.2d 502, cert. denied, 260 Conn. 912, 796 A.2d 558 (2002).

In *Jarrett* v. *Commissioner of Correction*, supra, 108 Conn. App. 72–73, we reviewed a petitioner's claim that he was incompetent at the time he rejected a plea offer and pleaded not guilty by reason of mental disease or defect. The petitioner claimed that he rejected the plea offer because he did not care about his defense, and that he planned on killing himself after the trial. The petitioner also presented expert testimony in the habeas trial that he had been incompetent. Id., 72. Nonetheless, we upheld the habeas court's finding that "the petitioner presented no evidence to overcome the presumption of his competency at the time he rejected the plea offer." Id. The habeas court, as the trier of fact, was permitted to "believe some, none or all of the testimony" of the petitioner regarding his state of mind. Id.

Here, the petitioner claims she was incompetent at the time she pleaded nolo contendere. In part I of this opinion, we considered whether the petitioner demonstrated that trial counsel should have been aware of

her alleged incompetence. Here, we consider whether the petitioner has demonstrated that she was in fact incompetent when she pleaded nolo contendere.

Although the transcript of the plea hearing is unavailable, trial counsel testified that he did not remember the plea hearing and canvass, but testified that the petitioner "clearly understood that, you know, if she went to trial, and she lost, she'd be a whole lot worse off than if she was able to work it out for a lesser plea." He also testified that he did not recall anything occurring that would have warranted stopping the plea hearing and calling for a competency hearing, and that he was aware at the time that he could have done so.[8] He further confirmed that the petitioner had not insisted on going to trial at any point during his representation of her.

The petitioner testified that she was severely depressed at the time of her trial, and that she was aware that her attorney referred her for testing regarding lack of mental capacity. She was largely nonresponsive regarding her ability to comprehend the proceedings,[9] and stated that she pleaded nolo contendere so that she could go to prison and die, but that she had not told anyone, including the doctors, that that was her intention. When asked how she came to realize that her plea was not intentional, she stated that "[i]t was a growth process. It didn't happen, like, overnight. My first, um, enlightening, and this is to— was to admit that I did suffer from mental health conditions." She also testified that she was facing an overwhelming amount of stress at the time.

On cross-examination, the petitioner confirmed that she knew she would go to prison after having entered the plea of nolo contendere, although she reaffirmed that she believed she was going to her death. She also confirmed that when she entered her plea, the judge had asked her questions to which she responded.[10]

On redirect examination, the petitioner's attorney again questioned her:

"Q. Okay. What I want to ask you is, why—why didn't you just do it back then? Why didn't you work with him on putting on a defense for your case back then when it was pending?

"A. Uh, mental health conditions portrays in a person's—in my mind that did not help me to fight for myself.

"Q. So, if I understand you correctly, and correct me if I'm wrong, are you saying that you were not in a mental state of mind to help yourself, or to help defend yourself?

"A. Right."

At sentencing, the petitioner stated that she was "fully prepared to face the punishment, and I must be pun-

ished for what I did.''

In its memorandum of decision, the habeas court credited trial counsel's testimony, and did not credit the petitioner's, stating that her testimony that she entered the plea of nolo contendere in order to die ''is belied by much of the information at or around the time of the criminal proceedings up to and including the plea and sentencing, which occurred only three months after the [plea].'' The court pointed to her cooperation with the medical and psychological testing procedures as ''hardly present[ing] a picture of a person who only went through the process so she could die.'' It also noted that her statements of remorse at sentencing demonstrated that she was not ''bent on self-destruction as a result of the plea process, but someone who was well aware of the process she was engaged in and sorry for what she had done.'' Regarding her failure to remember her answers to many of the questions related to the plea canvass, the court determined that although the canvass transcript was not provided, there was no evidence presented that the canvass was inadequate. The court relied on evidence that trial counsel indicated that he would have stopped the canvass if there was a suggestion of incompetence, the petitioner agreed that she responded to all the questions asked by the judge at the plea canvass, and the trial judge was highly experienced and would have stopped the proceedings himself if there was a hint of incompetence. The habeas court therefore determined that the petitioner's second claim should be denied. We agree with the habeas court's determination.

Neither the reports nor the petitioner's own testimony demonstrate that she was incompetent, and she did not present any medical testimony at the habeas trial regarding her claimed incompetence. As we have already stated, we conclude, as did the habeas court, that the reports demonstrate that the petitioner was likely suffering from mental illness, but not that she was incompetent at the time of her plea. The habeas court did not credit the petitioner's statements that she was not going to fight for herself and was entering the plea of nolo contendere in order to kill herself.[11] We see no reason to conclude that this determination was erroneous.

On the basis of all of the foregoing, we conclude that the habeas court properly determined that the petitioner failed to demonstrate that she was incompetent at the time she pleaded nolo contendere, and, therefore, failed to demonstrate that her plea was not knowing, voluntary, and intelligent.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The habeas court granted the petition for certification to appeal from the judgment of the habeas court.

[2] The lengthy history of the habeas action is recounted in greater detail

in a prior decision by this court in *Moye* v. *Commissioner of Correction*, 110 Conn. App. 134, 954 A.2d 240 (2008), and by the habeas court in *Moye* v. *Commissioner of Correction*, Superior Court, judicial district of New Haven, Docket No. CV-09-8412103-S, 2009 WL 3839292 (October 22, 2009). From 2000 to 2004, the matter was stayed for the petitioner to obtain mental health treatment. In 2005, the habeas court, *Hon. Anthony V. DeMayo*, judge trial referee, "expressed concerns with the petitioner's decision to go forward with her petition . . . because the petitioner, who had received a favorable plea bargain, already had served her sentence." *Moye* v. *Commissioner of Correction*, supra, 136. Following multiple hearings, the habeas court dismissed the habeas petition as lacking merit and not being in the petitioner's best interest. Id., 138–39. We then reversed the habeas court's judgment and remanded the case to the habeas court because the petitioner was entitled to an evidentiary hearing. Id., 142.

Upon remand to the habeas court, the petitioner's attorney moved for a competency hearing. The court, *Corradino, J.*, which later presided over the habeas trial, held a hearing on March 31, 2009, during which two doctors testified and submitted reports on the issue of the petitioner's competency. The court determined that the petitioner was not competent, and determined that the habeas matter should be stayed pending further evaluation of the petitioner's mental state with specific respect to the petitioner's "ability to demonstrate a rational understanding of her legal circumstances or her capacity to rationally discuss and weigh the advisability of continuing with this action." *Moye* v. *Commissioner of Correction*, supra, 2009 WL 3839292, *12.

[3] The court did not make a determination as to whether the petitioner had proven that she was prejudiced by her attorney's alleged deficient performance because it concluded "that when the claim is made that the basis for the ineffective assistance claim is counsel's failure to investigate competency, the establishment of such a claim incorporates a finding that the second prong of prejudice has been established." This court, however, has rejected similar reasoning in *Johnson* v. *Commissioner of Correction*, 144 Conn. App. 365, 371, 73 A.3d 776, cert. denied, 310 Conn. 918, 76 A.3d 633 (2013), and *Bethea* v. *Commissioner of Correction*, 36 Conn. App. 641, 645–46, 652 A.2d 1044, cert. denied, 232 Conn. 918, 655 A.2d 260 (1995), both of which involved competency questions, and we note that in *Carraway* v. *Commissioner of Correction*, 317 Conn. 594, 600 n.6, 119 A.3d 1153 (2015), our Supreme Court recently clarified that "[i]n the context of a guilty plea . . . to succeed on the prejudice prong the petitioner must demonstrate that, but for counsel's alleged ineffective performance, the petitioner would not have pleaded guilty and would have proceeded to trial." (Internal quotation marks omitted.) As we have concluded that the habeas court correctly determined that trial counsel's performance was not deficient, we need not remand the matter to the habeas court for a finding as to prejudice.

[4] General Statutes (Rev. to 1993) § 54-56d provides in relevant part: "(a) Competency requirement. Definition. A defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense.

"(b) Presumption of competency. A defendant is presumed to be competent. The burden of proving that the defendant is not competent by clear and convincing evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry.

"(c) Request for examination. If at any time during a criminal proceeding it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency. . . ."

[5] On recross-examination, trial counsel also testified:

"Q. You understand that [a] competency evaluation is different from a mental health defense; right?

"A. Sure.

"Q. And you've had experience with competency—competency proceedings, prior to representing [the petitioner]?

"A. Sure.

"Q. And you understood the inquiry that would need to be required that—inquired into?

"A. That's correct.

"Q. And your interactions with her made—made you believe that she understood both the charges against her, the actors in it, and could actually assist you in your defense; right?

"A. Absolutely.

"Q. And she was assisting you in your defense; right?

"A. She was, yes.

"Q. All right."

[6] Number 96-215 of the 1996 Public Acts amended subsection (b) of § 54-56d, changing the burden of proof for incompetence from clear and convincing evidence to a preponderance of the evidence. This change was effective June 4, 1996. Those cases decided subsequent to this change therefore involved a lesser burden for proving incompetence than was in place at the time of the petitioner's guilty plea.

[7] Both parties stated they were unable to obtain the plea canvass transcript due to the age of the case.

[8] The following exchange occurred between the respondent's counsel and trial counsel:

"Q. Do you recall the plea procedure? What happened during—when she entered that plea?

"A. Uh, it was too long ago.

"Q. I figured as much. But had some—do—do you recall anything occurring during that plea which would have caused you to stop it right there and ask for that competency evaluation?

"A. No.

"Q. Were you aware that that's a possibility?

"A. Sure. I mean, I've done it in the past.

"Q. And at—at the time you were representing [the petitioner], you had been practicing nine years?

"A. About that, yes.

"Q. And had you done criminal cases before?

"A. Absolutely.

"Q. Had you had competency issues before?

"A. Yes.

"Q. So, you were familiar with it?

"A. Yes."

[9] The following colloquy occurred between the petitioner and her habeas attorney:

"Q. Do you have an understanding—what was your understanding of the seriousness of the charges?

"A. I don't know if I made a conclusion at that time.

"Q. Okay. Were you aware of what the evidence was that the state claimed to have against you?

"A. I'm not sure at that time.

"Q. Okay. What—when—when the criminal case was pending, in your mind, what were you—what was your goal? What were you focusing on?

"A. Because I was so concerned for my family, and not myself, I did not even consider those goals.

"Q. Okay. At some point, I think in October of—or—or June of 1994, you pled nolo contendere to the charge of [arson] in the second degree; do you remember that?

"A. Yes, I do.

"Q. Okay. Do you remember having any discussions with Attorney Carty about whether you should accept that plea or not?

"A. Not really."

On cross-examination, the following exchange occurred between the respondent's counsel and the petitioner:

"Q. You understood that you had two options; right? You could either enter your plea or go to trial; right?

"A. Are you talking now, or at that time?

"Q. At that time.

"A. At that time, I—I—I don't know."

[10] The following occurred between the petitioner and the respondent's attorney:

"Q. You may not remember specific answers, but when the judge was asking you questions on the day that you entered that plea, you did respond to that judge; right?

"A. On the record, yes, I responded."

[11] Moreover, the petitioner's testimony did not indicate that she was unable to understand the proceedings. In *State* v. *Ross*, supra, 269 Conn. 213, the defendant had stated that he wanted to stipulate to the death penalty and made a variety of choices which appeared manifestly against his own interest; our Supreme Court determined that this was not evidence of incompetence. It stated that "the facts adduced at the hearing supported, at most,

an inference that the defendant was reluctant to assist counsel, not that he was unable to do so." (Emphasis omitted.) Id., 273; see also *Jarrett* v. *Commissioner of Correction*, supra, 108 Conn. App. 72–73. By the same token, the petitioner's claims here, even were we to credit them, do not indicate that her plea was entered while she was incompetent.

------------------------------------